**POLICE ASSOCIATION OF NEW ORLEANS, et al.**

v.

**CITY OF NEW ORLEANS, et al.**

Civil Action No. 94–0065.

United States District Court,
E.D. Louisiana.

Jan. 2, 1997.

---

Frank Gerald DeSalvo, Edward K. Newman, New Orleans, LA, Dale Charles Wilks, Maitland Bros. Co., Littlestown, PA, Jeffery Mark Lynch, New Orleans, LA, for the Police Association of New Orleans.

Frank Gerald DeSalvo, New Orleans, LA, Dale Charles Wilks, Maitland Bros. Co., Littlestown, PA, Jeffery Mark Lynch, New Orleans, LA, for Ronald J. Cannatella, Forrest Austin, Jr., Albert Bowman, Kathleen Brown, Randall Chestnut, Roy Gibliant, Imbraguglio, Bedford Jones, Jerome Laviolette, Charles–Little, Luther Lumpkin, III, Wesley Morris, Larry Nettles, Michael Nuessly, Leo Peters, Jr., Elmon Randolph, Steven Smegal, Arthur Smock, III, Kenneth Solis, Michael Sposito, Brett Thorne, Frank–Vaccarella, Keith Wehmeier, Gerald Young.

Avis Marie Russell, Simon, Peragine, Smith & Redfearn, L.L.P., New Orleans, LA, Frank Gerald DeSalvo, New Orleans, LA, Dale Charles Wilks, Maitland Bros. Co., Jeffery Mark Lynch, New Orleans, LA, for Eric Hessler.

Ann Marie Sico, Bernard, Cassisa & Elliott, Metairie, LA, Annabelle Hoppe Walker, City Attorney's Office, New Orleans, LA, Avis Marie Russell, Simon, Peragine, Smith & Redfearn, L.L.P., New Orleans, LA, Robert P. Early, Sr., Gretna, LA, Elmer Grant Gibbons, III, New Orleans, LA, Ralph D. Dwyer, Jr., New Orleans, LA, for the City of New Orleans.

Ann Marie Sico, Bernard, Cassisa & Elliott, Metairie, LA, Elmer Grant Gibbons, III, Ralph D. Dwyer, Jr., New Orleans, LA, for Joseph M. Orticke, Michael Doyle.

Robert A. Barnett, Guste, Barnett & Shushan, New Orleans, LA, for Jeffery M. Lynch.

Jeffery M. Lynch, Guste, Barnett & Shushan, L.L.P., New Orleans, LA, pro se.

Robert A. Barnett, Jeffery Mark Lynch, Guste, Barnett & Shushan, New Orleans, LA, for Dale C. Wilks, Guste, Barnett & Shushan, L.L.P.

## MEMORANDUM AND ORDER

SEAR, Chief Judge.

### Background

Plaintiffs, the Police Association of New Orleans ("PANO") and twenty-four white New Orleans police officers, filed suit against the City of New Orleans, alleging that on December 31, 1993, the New Orleans Police Department ("NOPD") made a series of unlawful transfers and promotions.[1] As a result of the litigation, plaintiffs received both promotions and backpay.

On April 19, 1995, plaintiffs, the "prevailing parties" under 42 U.S.C. § 1988, filed a motion for attorney fees for Jeffery M. Lynch ("Lynch"), Frank G. DeSalvo ("DeSalvo"), and Dale C. Wilks ("Wilks"). On June 20, 1995, I denied this motion without prejudice because the attorneys failed to provide adequate documentation of their services and hourly rates.

On August 22, 1995, plaintiffs filed a second motion for attorney fees, remedying the deficiencies cited in my denial of their previous motion. Wilks' fees, however, was omitted from this motion. Accordingly, on October 12, 1995, I granted attorney fees for only Lynch and DeSalvo.

Plaintiffs later filed a motion for reconsideration of the amount of the fee award, which I granted on November 16, 1995.[2] Plaintiffs received an additional award for Lynch and DeSalvo, based on new documentation submitted in support of time entries which were disallowed in the initial award.[3] However, plaintiffs did not make any fee claim for Wilks in this motion.

---

**1.** Plaintiffs sought compensatory and injunctive relief pursuant to the Equal Protection and Due Process Clauses of the Fourteenth Amendment, 42 U.S.C. § 1981, § 1983 and § 1985 as well as pendant state law claims, for alleged acts of racial discrimination.

**2.** *See* Record Document No. 98.

**3.** *Id.*

On July 25, 1996, over seven months after the initial fee award, Wilks moved for his attorney fees. Wilks claims that he was outside the United States at the time the second motion was filed, and that he has a right to attorney fees, preserved by his intervention on March 7, 1995.[4] Wilks and Lynch had intervened to protect their right to fees because plaintiffs had indicated they may waive their right to attorney fees should they prevail.[5]

In opposition to Wilks' motion, defendant argues that Wilks' claim for attorney fees is precluded, since it was not made or preserved prior to the grant of attorney fees on October 12, 1995.[6] Alternatively, defendant argues Wilks' claim is excessive, duplicative, and inadequately documented.[7] In accordance with the order dated August 28, 1996, Wilks filed a supplemental memorandum addressing these objections.

### Discussion

### I. Preclusion

■ Pursuant to 42 U.S.C. § 1988, a motion by prevailing parties for attorney fees is treated as a distinct claim for relief, uniquely separable from the previously litigated cause of action.[8] The court is required to make a separate and independent inquiry, which cannot commence until one party has "prevailed."[9] The resulting determination, when it conclusively disposes of the fee claims, must then be accorded the same degree of finality as a judgment on the merits.[10] The finality of a decision is pivotal for purposes of both appeal and claim preclusion.[11]

Defendant argues that the previous award of attorney fees, entered on October 12, 1995, represents a final judgment on the question of attorney fees, and thus precludes Wilks from now making a separate request for fees.[12]

■ The doctrine of claim preclusion treats a judgment as the full measure of relief between the same parties on the same claim or cause of action.[13] Thus, a final decision by the court bars the relitigation of all issues relevant to the decided claim, whether raised at trial or not.[14]

■ Four requirements must be met in order for claim preclusion to apply: (1) the parties must be identical in both the prior and current actions; (2) the prior judgment must have been rendered in a court of competent jurisdiction; (3) there must have been a final judgment on the merits; and (4) the same cause of action must be involved in both cases.[15]

### A. Identical Parties.

■ A litigant has a due process right to a full and fair opportunity to litigate his claim.[16] This right makes it essential that the preclusive effect of prior litigation apply only to a party or his privy.[17]

---

4. *See* Plaintiff's Supplemental Memorandum in Support, at 4.

5. *See* Motion to Intervene, Record Document No. 30.

6. *See* Memorandum in Opposition to Motion for Attorney's Fees, at 2.

7. *Id.* at 6–8.

8. *Shipes v. Trinity Industries, Inc.,* 883 F.2d 339, 343 (5th Cir.1989); *White v. New Hampshire Dep't. of Employment Security,* 455 U.S. 445, 452, 102 S.Ct. 1162, 1166, 71 L.Ed.2d 325 (1982).

9. *Id.*

10. *Shipes* 883 F.2d at 341.

11. *Restatement (Second) of Judgments* § 13, cmt. b (1982).

12. *See* Memorandum in Opposition to Motion for Attorney's Fees, at 2–3.

13. *Curtis v. Interstate Brands Corporation,* 782 F.Supp. 313, 314 (M.D.La.1992) (citing *Sea–Land Services, Inc. v. Gaudet,* 414 U.S. 573, 578–579, 94 S.Ct. 806, 811–812, 39 L.Ed.2d 9 (1974); *Kaspar Wire Works, Inc. v. Leco Engineering & Mach.,* 575 F.2d 530, 535 (5th Cir.1978)).

14. *Curtis* 782 F.Supp. at 314.

15. *Howell Hydrocarbons, Inc. v. Adams,* 897 F.2d 183, 188 (5th Cir.1990); *Curtis* 782 F.Supp. at 315.

16. *Benson and Ford, Inc. v. Wanda Petroleum Co.,* 833 F.2d 1172, 1174 (5th Cir.1987).

17. *Id.*

On March 7, 1995, Wilks was granted leave to intervene as a plaintiff in this action to protect his right to attorney fees. Therefore, at the time the Memorandum and Order of October 12, 1995 granted attorney fees to Lynch and DeSalvo, Wilks was a party to the action even though his claim for fees was not considered.

### B. Jurisdiction.

■■■■ The second requirement is that the prior judgment be rendered in a court of competent jurisdiction. At issue is whether a district court retains jurisdiction over a fee question after an appeal is taken. As a general rule, the effective filing of a notice of appeal transfers jurisdiction from the district court to the court of appeals with respect to all matters involved in the appeal.[18] This rule, however, is not absolute; one well recognized exception is that the district court retains jurisdiction over matters collateral to the merits of the action, such as a motion for attorney fees or sanctions.[19] Therefore, I retained jurisdiction over the question of attorney fees even though the underlying litigation was on appeal.

### C. Final Judgment.

The third element of claim preclusion is a final judgment on the merits.[20] The Fifth Circuit has held that, for the purposes of claim preclusion, the prior judgment must be "a final appealable order" which is not within the district court's plenary power to revise or set aside at its discretion.[21]

When there are multiple claims or multiple parties, as in this attorney fees dispute, the court may direct the entry of final judgment as to one or more but fewer than all of the claims or parties by making an express determination that there is no just reason for delay. Fed.R.Civ.P. 54(b). This is known as a Rule 54(b) certificate. If a Rule 54(b)

certificate is not issued, Fed.R.Civ.P. 54(b) provides in relevant part:

> In the absence of such determination and direction, any order or form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties *shall not terminate the action as to any of the claims or parties,* and the order or other form of decision is *subject to revision* at any time before the entry of judgment adjudicating all the claims and the right and liabilities of all the parties.

(Emphasis added).

■■■■ On April 19, 1995, plaintiffs moved for attorney fees. This motion included claims for the fees of Lynch, DeSalvo, and Wilks. On June, 22, 1995, this motion was denied without prejudice because the attorneys failed to provide adequate documentation of their time and hourly rates.

On August 22, 1995, plaintiffs filed their second motion for attorney fees. However, this motion included claims for only Lynch and DeSalvo. Consequently, the Memorandum and Order of October 12, 1995 granted fees for only Lynch and DeSalvo. The claim for Wilks' fees was neither considered nor resolved on its merits.

I find that this attorney fees dispute involves multiple claims and multiple parties. Specifically, Wilks, Lynch, and PANO are each separate parties and Wilks' fees, Lynch's fees, and DeSalvo's fees are each separate claims.

■■■■ The Memorandum and Order of October 12, 1995, resolved only two of the three claims for attorney fees; Wilks' fee claim was left outstanding. Since a Rule 54(b) certificate was never issued, the Memorandum and Order did "not terminate the action as to *any* of the claims or parties." Fed.R.Civ.P. 54(b) (emphasis added). Thus, there has been no final judgment in regard to Wilks' fees and

---

18. *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58–59, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982). *Newball v. Offshore Logistics International,* 803 F.2d 821, 825 (5th Cir. 1986).

19. *Thomas v. Capital Security Services, Inc.,* 812 F.2d 984, 987 (5th Cir.1987).

20. *Howell Hydrocarbons,* 897 F.2d 183, 188 (5th Cir.1990).

21. *See Clearwater, Inc. v. Ashland Chemical Co.,* 93 F.3d 176, 179, fn. 2 (5th Cir.1996) (Emphasis added); *Avondale Shipyards, Inc. v. Insured Lloyd's,* 786 F.2d 1265, 1269 (5th Cir.1986).

his claim has not been terminated. Fed. R.Civ.P. 54(b). Furthermore, since neither a Rule 54(b) certificate nor a final judgment regarding all claims for attorney fees has been entered, the previous order regarding attorney fees is subject to revision and does not constitute a final judgment for the purposes of claim preclusion.[22]

Accordingly, for the purposes of claim preclusion, I find that there has been no final judgment on the merits regarding Wilks' claim for attorney fees.

### D. Same Claim or Cause of Action.

The final requirement of claim preclusion is that both the prior and current actions involve the same claim or cause of action. The prior award of attorney fees was premised on PANO having prevailed in a § 1983 claim against the City of New Orleans. This gave rise to a claim for attorney fees to prevailing parties, pursuant to 28 U.S.C. § 1988. Wilks' current motion is premised on this same cause of action. However, since Wilks was granted intervenor status, his fee claim is separate and distinct from the fee claims of Lynch and DeSalvo. Thus, the Memorandum and Order of October 12, 1995, did not resolve the same claim as Wilks presents in the current motion.

Accordingly, I find that for the purposes of claim preclusion, Wilks was a party to the Memorandum and Order of October 12, 1995, and the court had jurisdiction to decide the fee issue even though the underlying case was on appeal. However, I also find that there was no final judgment on the merits and Wilks' motion for attorney fees is not based on a claim that was resolved in the Memorandum and Order of October 12, 1995.

Therefore, Wilks' motion for attorney fees is *not* barred by the doctrine of claim preclusion.

### II. Excessive, Duplicative, or Inadequately Documented Fees

Defendant also argues that Wilks' claim for attorney fees should be denied because they are excessive, duplicative, and inadequately documented.[23]

In the Fifth Circuit, the starting point for determining the adequacy of a claim for attorney fees is to compute what is commonly referred to as the "lodestar" figure.[24] Initially, the district court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rate for the participating lawyer.[25] The lodestar is then computed by multiplying the number of hours by the hourly rate.[26]

Next, the district court must consider the applicability and respective weights of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974).[27] The court can make upward or downward adjustments to the lodestar figure if the *Johnson* factors warrant such modifications.[28] However, the lodestar is presumptively correct and should be modified only in exceptional cases.[29]

### A. Computation of Lodestar Figure

The party seeking attorney fees bears the burden of submitting adequately documented time records.[30] The court should use the submitted time as a benchmark and exclude any time that is "excessive, duplicative, or inadequately documented." [31]

---

**22.** *See Clearwater, Inc. v. Ashland Chemical Co.*, 93 F.3d 176, 179 fn. 2 (5th Cir.1996) (Emphasis added); *Avondale Shipyards, Inc. v. Insured Lloyd's*, 786 F.2d 1265, 1269 (5th Cir.1986).

**23.** *Id.* at 6–8.

**24.** *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). *See also Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

**25.** *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir.), *cert. denied*, — U.S. —, 116 S.Ct. 173, 133 L.Ed.2d 113 (1995).

**26.** *Id.*

**27.** *Watkins*, 7 F.3d at 457.

**28.** *Watkins*, 7 F.3d at 457.

**29.** *Id.*

**30.** *Watkins*, 7 F.3d at 457.

**31.** *Id.*

The hours that remain are deemed to be "reasonably expended on the litigation."[32]

■ On June 20, 1995, I denied without prejudice plaintiffs' first motion for attorney fees. In particular, I rejected Wilks' claim for fees because he did not provide any evidence justifying his requested hourly rate of $150.[33] In his current motion, Wilks uses his previous affidavit documenting his hours, but he also adds a second affidavit which justifies his requested hourly rate.[34] He states that his 22 years of experience in civil rights cases, the contingent nature of such claims,[35] and his usual hourly rate of $150 in similar cases, entitle him to a rate of $150 per hour for work in the present case.[36]

Under 42 U.S.C. § 1988, reasonable hourly rates are determined with respect to the prevailing market rates in the relevant legal community.[37] Drawing upon my knowledge of attorneys' fees in this locality, and in light of the hourly rates found reasonable for Lynch ($125) and DeSalvo ($150), I conclude that Wilks' requested rate of $150 per hour is reasonable.

Wilks requests compensation for a total of 43 hours. However, defendant objects to several entries on Wilks' time record.

■ First, defendant argues that the 4 hours Wilks charges for two meetings with PANO are duplicative of hours charged by DeSalvo. Wilks responds that DeSalvo's attendance at these meetings was necessary because of his role as PANO's retained counsel. In addition, Wilks claims that his (Wilks') attendance was necessary because of his familiarity with the consent decree as a result of his involvement in the Williams case.[38] I find that the presence of both attorneys at these meetings was reasonable.

■ Second, defendant objects to the 8 hours Wilks charges for research regarding § 1983 claims and consent decree violations and the 16 hours (defendant mistakenly calculates it as 18 hours) he charges for preparing the temporary restraining order and complaint (a total of 24 hours). Defendant points out that Lynch claimed hours for similar work. Wilks responds that, in order to prevent the NOPD from making additional unlawful transfers and promotions, they were under urgent time pressure to draft the temporary restraining order and complaint. Therefore, Wilks argues that the time he and Lynch spent on these matters should not be considered duplicative. I find that the alleged time pressure is irrelevant. I further find that two lawyers working on these projects is duplicative and so both lawyers are not entitled to full fees. Accordingly, Wilks is awarded half of the time he claims for these projects, that is, Wilks is entitled to 12 hours for this work.

■ Third, defendant objects to the 7 hours on January 7, 1994, which Wilks charges for "meeting with the clients to sign the complaint, filing suit, [and] in-chambers conference with Judge Sear on TRO." Both Lynch and DeSalvo claimed fees for similar work. It does not take more than one lawyer to obtain signatures for the complaint, file the complaint with the court, or represent the client in a conference. Therefore, I find that these 7 hours are duplicative and are precluded.

■ Finally, defendant objects to the 4 hours Wilks charges for reviewing defendant's trial memorandum and plaintiffs' reply brief. Defendant argues that the reasonableness of these hours is inadequately documented. Wilks responds that it is reasonable and appropriate for someone other than Lynch, the drafter of the reply brief, to

32. *Id.*

33. *See* Record Document 72, at 3.

34. *See* Record Document 106, Plaintiff's Motion and Memorandum for Attorney Fees Pursuant to 42 U.S.C. 1983, and attached Affidavits.

35. I assume that "contingent nature" refers to the attorney receiving fees only if his client prevails in the litigation.

36. *Id.*

37. *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984).

38. *See* Plaintiff's Supplemental Memorandum in Support, at 5–6.

review the opposing trial memorandum and corresponding reply brief. I find that 4 hours is excessive for merely reviewing two briefs. Wilks is only entitled to 2 hours for this work.

Defendant does not object to the 4 hours Wilks charges for reviewing plaintiffs' trial memorandum.

In sum, I find that Wilks reasonably expended 22 hours on this case. Multiplying the number of hours by the hourly rate, I find that Wilks' lodestar figure is $3,300.

### B. *Johnson* Factors

The next step is to determine whether the *Johnson* factors warrant an adjustment of the lodestar figure. I have already considered several of these factors when I examined the reasonableness of the time Wilks spent on the litigation and his hourly rate: the time and labor required; the skill required to perform the legal services; the customary fee; whether the fee was fixed or contingent; and the experience, reputation, and ability of the attorneys. I need not revisit these factors.

In regard to the remaining *Johnson* factors, I make the following findings:

(1) The novelty and difficulty of the questions involved: this case was not complicated and the issues were not novel.

(2) The effect on other employment: Wilks does not allege that he lost clients or other business opportunities as a result of this litigation.

(3) Time limitations: this case did not impose any exceptional time pressure upon plaintiffs' counsel.

(4) The amount involved and results obtained: counsel for plaintiffs were successful in obtaining both declaratory and monetary relief, in the form of backpay, for their clients. However, there is nothing exceptional that warrants an adjustment to the lodestar figure.

(5) The "undesirability" of the case: nothing indicates that plaintiffs had difficulty

finding representation or that their case was otherwise undesirable.

(6) The nature and length of the Wilks' relationship with his clients: there is nothing exceptional regarding this factor.

(7) Awards in similar cases: neither party has apprised the court of awards in similar cases.

After considering each *Johnson* factor, I find that there are no exceptional circumstances that warrant an adjustment to the lodestar amount.[39] Thus, Wilks is entitled to recover attorney fees in the amount of $3,300.

### *Conclusion*

Accordingly,

IT IS ORDERED that the City of New Orleans pay plaintiffs the additional sum of $3,300 for Wilks' fees in this action.

---

**39.** *See Watkins,* 7 F.3d at 457 (the lodestar figure is presumptively correct and should not be modified absent exceptional circumstances).